**Victor James HUGHSON, Plaintiff,**

**v.**

**The COUNTY OF ANTRIM, the Antrim County Sheriff's Department, and the Antrim County Prosecutor's Office, James G. Young, and William Cronnen, Defendants.**

**No. G86–312 CA7.**

United States District Court, W.D. Michigan, S.D.

Dec. 15, 1988.

Mark A. Risk, Traverse City, Mich., for plaintiff.

Thomas L. Drenth, Clary Nantz Wood Hoffius Rankin & Cooper, Grand Rapids, Mich., and Cummings, McClorey, Davis & Acho by Michael E. Rosati, Eileen K. Husband, Livonia, Mich. for Antrim County Prosecutor.

Robert P. Tremp, Traverse City, Mich., for J. Young, W. Cronnen & Prosecutor, Antrim County Sheriff.

## OPINION

HILLMAN, District Judge.

Plaintiff, Victor Hughson, was originally employed by the Antrim County Detective Unit, a federally funded program. When federal funds were withdrawn, the County of Antrim continued that program pursuant to special appropriations. Plaintiff was originally hired by a three member committee that headed the Antrim County Detective Unit, comprised of the Antrim County Prosecutor, James G. Young, the Antrim County Sheriff, E. Willis Wilcox, and a member of the Antrim County Board of Commissioners.

The Antrim County Detective Unit was eventually dissolved, and one detective became an employee of the Antrim County Sheriff, while the other, plaintiff, began working for the Antrim County Prosecuting Attorney in 1979. A resolution was passed and funds were appropriated to the Antrim County Prosecuting Attorney to provide for plaintiff's position as investigator.

Plaintiff continued working until February 6, 1986. Shortly before that date, James Young suggested to the Antrim County Board of Commissioners that plaintiff's position may no longer be required. The Board of Commissioners authorized Young, as Prosecuting Attorney, to obtain a study regarding the detective unit. The study concluded that there was no need for the position of investigator in the prosecutor's office.

Prosecuting Attorney Young did not apply for funding for the position of investigator in his 1986 budget. At a meeting of the Antrim County Board of Commissioners, held January 29, 1986, the Board of Commissioners eliminated the position of investigator in the Antrim County Prosecutor's office.

Plaintiff filed a complaint on May 6, 1986 and a first amended complaint on July 3, 1986. He named as defendants the County of Antrim, the Antrim County Sheriff's Department, the Antrim County Prosecutor's Office, James G. Young, and William Cronnen. Plaintiff alleged that defendants breached his employment contract, breached his oral contract of employment, violated his constitutional rights, violated the Employee Retirement Income Security Program Act, 29 U.S.C. § 1001 *et seq.*, violated the Whistleblowers' Protection Act, M.C.L. § 15.361 *et seq.*, violated the Michigan Elliott–Larsen Civil Rights Act, M.C.L. § 37.2101, *et seq.*, and the Federal Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, violated Michigan public policy, engaged in conspiracy, and breached

their implied covenant of good faith and fair dealing.

■ Defendant Antrim County argues that the Antrim County Sheriff's Department and the Antrim County Prosecutor's Office are not legal entities capable of being sued. I agree. Michigan is a jurisdiction in which the sheriff and prosecutor are constitutional officers, and there does not exist a sheriff's department or a prosecutor's office. Instead, the sheriff and the prosecutor are individuals, elected in accordance with constitutional mandates. Mich. Const. Art. 7, § 4. Since the sheriff's department and the prosecutor's office do not exist, they obviously cannot be sued.

Furthermore, in a letter dated July 20, 1988, the court was informed that defendants William Cronnen and James Young were dismissed from the suit. Consequently, the only defendant remaining in this action is the County of Antrim. The motion of defendants Young and Cronnen for judgment on the pleadings is now moot. The matter is thus before me only on defendant Antrim County's motion for summary disposition under Rule 56.

### Discussion

■ As the movant, defendant in this case bears the initial burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); *Celotex v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986); *Smith v. Hudson,* 600 F.2d 60 (6th Cir.1979), *cert. denied,* 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979).

To be material, an issue's resolution must affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). To be "genuine," a factual issue must present "sufficient disagreement to require submission to a jury...." *Anderson,* 106 S.Ct. at 2512. In a civil trial resolution of a motion for summary judgment depends on "whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict...." *Id.*

This motion turns first on the question of whether this court has jurisdiction over the case. I will thus address the counts of the complaint which purport to raise a federal question first.

Plaintiff asserts that this court has jurisdiction because plaintiff has raised First Amendment claims as well as pled facts under 28 U.S.C. § 1343 and 42 U.S.C. § 1983. It should be noted that plaintiff concedes that ERISA does not apply to defendant County's pension plan and therefore cannot form a basis for jurisdiction in this case. Consequently, summary judgment is granted as to Count IV of the complaint.

Plaintiff also does not address defendant's arguments concerning the age discrimination claim and states that he "is not in a position to stipulate to dismiss" this count. I interpret this to mean that plaintiff concedes that this claim too is without merit. Defendant County of Antrim points out that it was the Traverse Narcotics Team (TNT) that allegedly replaced plaintiff with a younger person to work undercover with the area youth, and that TNT, an entity separate from Antrim County, is not a party to this action. Moreover, plaintiff's sworn deposition testimony negates the validity of his claim. Plaintiff was asked the following question: "[w]ould you agree that since you were never a member of the Traverse Narcotics Team, you could not have been replaced on the Traverse Narcotics Team?" Plaintiff's answer was: "[t]hat would be a true statement." Hughson v. I, p. 94. In light of the above, summary judgment is granted as to Count VI of the complaint.

The only remaining ground for federal jurisdiction is Count III of the complaint in which plaintiff alleges violation of his First and Fourteenth Amendment Constitutional rights. More specifically, plaintiff alleges that in April, 1984, plaintiff became a Democratic candidate for Sheriff of the County of Antrim and his opponent was a Republican, Guy Molby, who, in fact, won the November 4, 1984 election. Plaintiff further alleges that James Young, a Republi-

can, then Antrim County Prosecutor, endorsed Guy Molby as candidate for sheriff. Hughson further states that Guy Molby refused to deputize plaintiff, which significantly limited and impaired his ability to perform assigned duties. Plaintiff had funding denied for various programs under his control, and had his secretary and his department vehicle taken away. On or about February 7, 1986, plaintiff had his job eliminated by the County of Antrim. The job elimination allegedly was the direct result of the difference between Sheriff Guy Molby and plaintiff. Plaintiff claims that his termination "violated plaintiff's First Amendment and Fourteenth Amendment rights under the federal and state Constitution." Plaintiff thus makes a claim under 42 U.S.C. § 1983 against defendant.

Plaintiff claims that his First Amendment rights to freedom of association and speech were violated by defendant. He alleges that his troubles began when he spoke out against Sheriff Wilcox and that he was discharged due to his political affiliation. Plaintiff asserts that the county rather than the prosecutor terminated him since the county was responsible for his employment and its terms. Plaintiff's proof of his allegation is the following: 1) an opinion by the county's legal counsel advised the county that plaintiff was its employee and explained to defendant how to eliminate plaintiff's job position; 2) the county defended Hughson's claim for unemployment benefits in front of the Michigan Employment Security Commission as plaintiff's employer and is now collaterally estopped from asserting a contrary fact; 3) in a memo to Hughson, the County Prosecutor and Commissioner referred to plaintiff as a county employee and directed him to return county property; 4) allegedly, the prosecutor did not formally appoint plaintiff, but rather, the county assigned plaintiff to the prosecutor's office.

The County of Antrim claims that it had no control over the terms of plaintiff's employment. Defendant points out that a county has no inherent powers and has only delegated powers. Const.1963, Art. 7 § 1 provides: "[e]ach organized county shall be a body corporate with powers and immunities proved by law." Thus a county has only such powers as given to it by the Michigan Constitution and the Michigan Legislature. The county, by law, is not given the power to create a Detective Unit. It is the county prosecutor, who is a separate constitutional officer (Const.1963, Art. 7 § 4), who has the authority to appoint investigators. M.C.L. § 49.31 provides:

> In each county of the State of Michigan, the board of supervisors of such counties, at their regular annual meeting, may, by resolution authorize the appointment by the prosecuting attorney ... of such investigating officers, clerks, stenographers and other clerical employees as said board of supervisors shall deem necessary.

M.C.L. § 49.35 provides:

> Said assistant prosecuting attorneys and other employees appointed by said prosecuting attorney under this act shall hold office during the pleasure of the prosecuting attorney.

I find as a matter of law that based upon the Constitution and the statutes, the County of Antrim through its Board of Commissioners only is empowered with the authority to appropriate funds, as it deems necessary, to enable the prosecuting attorney to appoint assistant attorneys, investigators and other clerical employees. In his sworn affidavit, Jack White, a commissioner for Antrim County since 1977, explains that after the Antrim County Detective Unit was disabled in 1979, "the Antrim County Board of Commissioners, at the request of the Antrim County Prosecutor, appropriated funds for a position of investigator with said Antrim County Prosecutor." This process follows the procedure provided by M.C.L. § 49.31. Plaintiff offers no evidence that his position was not that of the prosecutor's investigator that the Board created the position of its own volition rather than at the request of the prosecutor.

Plaintiff's exhibit H is an excerpt of the resolution by the Board of Commissioners which provides that plaintiff "shall work under and be responsible to the Antrim

County Prosecuting Attorney." There is no indication in the resolution that plaintiff would not be subject to the mandate of M.C.L. § 49.35 which gives the prosecutor the authority to terminate plaintiff.

Plaintiff also does not dispute that in 1985, the Antrim County Prosecutor did not apply for funds to continue the investigator's position for the year 1986, as stated in paragraph 8 of Jack White's affidavit. Because of this, the Antrim County Board of Commissioners had no choice but to eliminate the position of investigator from the prosecutor's office effective April 7, 1986. The Board of Commissioners would have exceeded its power had it provided funds for a position not requested by the prosecutor.

Plaintiff relies heavily upon the opinion of Thomas Drenth, the county's legal counsel (plaintiff's exhibit E). The opinion does not constitute legal precedent and is not binding on this court, however, because of its importance to plaintiff's argument, I shall discuss it nonetheless.

Based upon the case of *Presque Isle County Board of Commissioners*, 1978 MERC Lab Op. 1309, Drenth advised the county that though the prosecutor has supervisory powers, including those of appointment and dismissal, an employee working under the prosecutor is nonetheless a county employee. The fact that an individual may be the county's employee for purposes of collective bargaining, as was the case in *Presque Isle*, however, does not give the county the exclusive authority to terminate the employee. The language of *Presque Isle* quoted by Drenth explicitly asserts that the prosecutor has the power to dismiss those working under him. Drenth correctly advised the county that if, as was not the case here, the prosecutor were to apply for funds for a certain position, the Board was empowered, for legitimate reasons, to refuse to appropriate those funds and thus eliminate the position. Drenth, however, did not assert that if the prosecutor does not apply for funds for a position in a particular year, the county has the authority, on its own, to maintain the position nevertheless. Thus I find that

plaintiff's reliance on the Drenth opinion is misplaced.

I conclude that it was not the County of Antrim through its Board of Commissioners, but rather the County prosecutor who was directly responsible for the termination of plaintiff. In *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) the Supreme Court determined that a local government cannot be held liable on a respondeat superior theory for the acts of an employee such as a prosecutor. Since defendant was not responsible for plaintiff's termination, it could not have deprived plaintiff of any of his constitutional rights. Consequently, I find that Antrim County has no liability as to this matter and grant summary judgment as to Count III of the complaint.

Having granted summary judgment as to Counts III, IV, and VI, I find that plaintiff has failed to establish any federal claims in this matter. The Supreme Court in *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), stated that if all federal claims in a suit are dismissed before trial, the state claims should be dismissed with them. The Sixth Circuit has been adamant in following this principle. In a very recent opinion the Court of Appeals for the Sixth Circuit stated: "[i]t is a clear rule of this circuit that if a plaintiff has not stated a federal claim, his pendent state law claims should be dismissed." *Washington v. Starke*, 855 F.2d 346 (6th Cir.1988). Accordingly, I dismiss the remaining counts, all of which allege state claims, without prejudice.

### Conclusion

Defendant's motion for summary judgment is granted. The counts alleging state claims are dismissed without prejudice.