*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PAMELA S. HARNDEN,

Plaintiff-Appellant,

v

JUDGE ELWOOD BROWN, SAMANTHA LORD, PROSECUTING ATTORNEY'S OFFICE, MICHAEL WENDLING, JUDGE MICHAEL HULEWICZ, ST. CLAIR COUNTY SHERIFF DEPARTMENT, SHERIFF MAT KING, PORT HURON POLICE DEPARTMENT, and CHIEF JOSEPH PLATZER,

Defendants-Appellees.

UNPUBLISHED
April 13, 2023

No. 361549
St. Clair Circuit Court
LC No. 2022-000317-CZ

Before: CAVANAGH, P.J., and BOONSTRA and RIORDAN, JJ.

PER CURIAM.

Plaintiff, proceeding *in propria persona*, appeals as of right the trial court's order granting summary disposition in favor of defendants, Judge Elwood Brown, Samantha Lord, the Prosecuting Attorney's Office (PA's Office), Michael Wendling, Judge Michael Hulewicz, the St. Clair County Sheriff Department (Sheriff's Department), Sheriff Mat King, the Port Huron Police Department (PHPD), and Police Chief Joseph Platzer, pursuant to MCR 2.116(C)(7) (immunity granted by law) and (8) (failure to state a claim). We affirm.

## I. BACKGROUND

This case arises from charges of eavesdropping, MCL 750.539c, filed against plaintiff in 2014 by the PA's Office. The prosecution ultimately filed a *nolle prosequi* and the charges were dismissed. Plaintiff brought this action against numerous defendants who allegedly were involved in her arrest and prosecution, ostensibly asserting claims of malicious prosecution and violations of her constitutional rights. Defendants moved for summary disposition on the basis of governmental immunity, prosecutorial immunity, judicial immunity, and quasi-judicial immunity. Defendants also argued that any claim based on plaintiff's arrest was barred because the arrest was

made pursuant to a lawfully issued arrest warrant. They further argued that any federal claims were barred by various immunities and the failure to state a claim. The trial court granted defendants' motion on the basis of both immunity and failure to state a claim.

## II. IMMUNITY

The trial court did not err by granting defendants' motion for summary disposition on the basis of immunity.

This Court reviews de novo a trial court's ruling on a motion for summary disposition. *Serven v Health Quest Chiropractic, Inc*, 319 Mich App 245, 252-253; 900 NW2d 671 (2017). Summary disposition is proper under MCR 2.116(C)(7) when relief is appropriate because of "immunity granted by law." "A party may support a motion under MCR 2.116(C)(7) by affidavits, depositions, admissions, or other documentary evidence, which is otherwise admissible." *Serven*, 319 Mich App at 253 (quotation marks and citation omitted). This Court must review the evidence in the light most favorable to the nonmoving party and accept the contents of the complaint as true, unless contradicted by documentary evidence submitted by the moving party. *Id*.

MCL 691.1407 of the governmental tort liability act (GTLA), MCL 691.1401 *et seq.*, provides, in relevant part: "Except as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function." "The immunity from tort liability provided by the governmental immunity act is expressed in the broadest possible language; it extends to all governmental agencies and applies to all tort liability when governmental agencies are engaged in the exercise or discharge of governmental functions." *McLean v McElhaney*, 289 Mich App 592, 598; 798 NW2d 29 (2010). "The GTLA allows suit against a governmental agency in only five areas." *Mack v Detroit*, 467 Mich 186, 195; 649 NW2d 47 (2002). "The five statutory exceptions to governmental immunity are the 'highway exception,' MCL 691.1402, the 'motor vehicle exception,' MCL 691.1405, the 'public building exception,' MCL 691.1406, the 'proprietary function exception,' MCL 691.1413, and the 'governmental hospital exception,' MCL 691.1407(4)." *Id*. at 195 n 8.

"Generally, governmental employees acting within the scope of their authority are immune from tort liability except in cases in which their actions constitute gross negligence." *Tarlea v Crabtree*, 263 Mich App 80, 89; 687 NW2d 333 (2004). MCL 691.1407(2) provides:

> Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency, each volunteer acting on behalf of a governmental agency, and each member of a board, council, commission, or statutorily created task force of a governmental agency is immune from tort liability for an injury to a person or damage to property caused by the officer, employee, or member while in the course of employment or service or caused by the volunteer while acting on behalf of a governmental agency if all of the following are met:
>
> (a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.

(b) The governmental agency is engaged in the exercise or discharge of a governmental function.

(c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage.

"[E]ven if governmental employees are found liable for gross negligence, the state may not be held vicariously liable unless an exception to governmental immunity applies[.]" *Mays v Governor*, 506 Mich 157, 198; 954 NW2d 139 (2020). This is also true for governmental agencies. See *Yoches v Dearborn*, 320 Mich App 461, 476-477; 904 NW2d 887 (2017). "[T]here is no exception to governmental immunity for intentional torts committed by governmental employees exercising their governmental authority, and governmental employers may not be held liable for the intentional tortious acts of their employees[.]" *Mays v Snyder*, 323 Mich App 1, 68; 916 NW2d 227 (2018) (citations omitted).

MCL 691.1407(5) "provides certain high-ranking officials with absolute immunity from tort liability[.]" *Petipren v Jaskowski*, 494 Mich 190, 204; 833 NW2d 247 (2013). It provides:

A judge, a legislator, and the elective or highest appointive executive official of all levels of government are immune from tort liability for injuries to persons or damages to property if he or she is acting within the scope of his or her judicial, legislative, or executive authority. [MCL 691.1407(5).]

"It is well settled that judges are accorded absolute immunity from liability for acts performed in the exercise of their judicial functions." *Serven*, 319 Mich App at 253 (quotation marks and citation omitted). "[J]udges are not liable to civil actions for their judicial acts even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." *Id.* (quotation marks and citation omitted). "Quasi-judicial immunity is an extension of absolute judicial immunity to non-judicial officers[.]" *Id.* at 254 (quotation marks and citation omitted). Quasi-judicial immunity "is available to those serving in a quasi-judicial adjudicative capacity as well as those persons other than judges without whom the judicial process could not function." *Id.* (quotation marks and citation omitted).

There are also "other areas outside the GTLA where the Legislature has allowed specific actions against the government to stand, such as the Civil Rights Act. Further, municipalities may be liable pursuant to 42 USC 1983. *Monell v New York City DSS*, 436 US 658; 98 S Ct 2018; 56 L Ed 2d 611 (1978)." *Mack*, 467 Mich at 195. "Establishing municipal liability under 42 USC 1983 requires proof that: (1) a plaintiff's federal constitutional or statutory rights were violated and (2) the violation was caused by a policy or custom of the municipality." *Johnson v Vanderkooi*, 502 Mich 751, 762; 918 NW2d 785 (2018). "An official has qualified immunity from suits under 42 USC 1983 when the official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Holeton v City of Livonia*, 328 Mich App 88, 102; 935 NW2d 601 (2019) (quotation marks and citation omitted).

On appeal, plaintiff only individually addresses the liability of the "heads of department," who she argues are liable because they must have given authorization to their employees to arrest her. She further argues that there is no immunity available to any defendant because they entered

her property and seized her without a valid warrant in violation of her constitutional rights. Plaintiff also argues that defendants are not entitled to immunity because they acted outside the scope of their authority.

With regard to the "heads of departments," plaintiff is apparently referring to Wendling, Sheriff King, and Chief Platzer. The trial court found that plaintiff failed to allege that those defendants directed any actions taken by their employees, they were acting within the scope of their authority, plaintiff failed to allege that their conduct amounted to gross negligence, and plaintiff did not allege that those defendant directly violated her constitutional rights. A sheriff, prosecutor, and police chief are all entitled to absolute immunity for actions taken within the scope of their authority. See *Petipren*, 494 Mich at 193-194 (police chief); *Margaris v Genesee Co*, 324 Mich App 111, 116; 919 NW2d 659 (2018) (county sheriff); *Bischoff v Calhoun Co Prosecutor*, 173 Mich App 802, 806; 434 NW2d 249 (1988) (prosecutor). Plaintiff's complaint does not specifically refer to Sheriff King or Chief Platzer and, therefore, fails to allege that they were not acting within the scope of their authority or that they violated any constitutional rights.[1]

With regard to Wendling, plaintiff merely alleged that he "is involved in the cases that go through his office." Thus, plaintiff similarly failed to allege that Wendling acted outside the scope of his authority. On appeal, plaintiff argues that Wendling is liable for malicious prosecution and, thus, acted outside the scope of his authority. However, Wendling, as a public prosecutor, is "not liable for malicious prosecution." *Matthews v Blue Cross & Blue Shield of Mich*, 456 Mich 365, 379; 572 NW2d 603 (1998). Additionally, while plaintiff alleged that the PA's Office denied her due process, a fair and speedy trial, freedom of speech, and the right to confront her accuser, she did not allege that Wendling himself violated her constitutional rights. Thus, the trial court properly dismissed the claims against Sheriff King, Chief Platzer, and Wendling on the basis of immunity.

With regard to the PHPD, the Sheriff's Department, and the PA's Office, the trial court found that these parties were not separate legal entities and construed the claims as being against the city of Port Huron and St. Clair County. The court concluded that plaintiff failed to allege any direct customs or practices that violated her constitutional rights and merely alleged that they were liable for the actions of their employees.

Plaintiff alleged that the PHPD and PA's Office abused their power and harassed her by moving forward with the case because Judge Brown told them to do so; the PA's Office denied her due process, a fair and speedy trial, freedom of speech, and the right to confront her accuser; and the Sheriff's Department was acting on behalf of the PHPD, and the PHPD denied her due process and ordered her seizure without a proper warrant. With regard to these entities, plaintiff did not allege any exception to governmental immunity. Thus, they cannot be held vicariously liable for any gross negligence by their employees. Nor can they be liable for the intentional torts of their employees.

---

[1] We also agree with defendants that, under the plain language of the GTLA, gross negligence is not an exception to absolute immunity. See MCL 691.1407(5). Nonetheless, as the trial court found, plaintiff failed to allege that the conduct of these defendants amounted to gross negligence.

With regard to plaintiff's constitutional claims, the trial court properly found that plaintiff failed to allege any customs or practices to hold the municipal defendants liable under 42 USC 1983. In *Johnson*, 502 Mich at 762, the Court explained that "[a] constitutional violation is attributable to a municipality if the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." (Quotation marks and citation omitted.) In addition, "[l]iability may also be based on a governmental custom even though such a custom has not received formal approval through the body's official decisionmaking channels, if the relevant practice is so widespread as to have the force of law[.]" *Id*. (quotation marks and citation omitted). While plaintiff did not expressly allege any "custom or practices," she alleged that, on the basis of people she talked to and "stories" she had heard, as well as her own experience, the PHPD "act[s] as thugs for the court" and the PHPD called in a favor to the Sheriff's Department. While perhaps alleging a pattern of conduct, these allegations fail to sufficiently allege an officially adopted or widespread practice. Thus, the trial court properly determined that the municipal defendants were immune from any alleged constitutional violations.

The remaining defendants are Judge Hulewicz, Judge Brown, and Lord. The trial court found that plaintiff had not alleged that Judge Hulewicz was aware of any improprieties, acted outside of his authority, or personally violated her constitutional rights. The trial court found that Judge Brown was entitled to judicial immunity and Lord was entitled to quasi-judicial immunity, except for allegations that they violated plaintiff's constitutional rights. However, the trial court found that because plaintiff did violate the eavesdropping statute, Judge Brown and Lord could not have violated her rights by reporting her for eavesdropping. The trial court properly found that Judge Hulewicz and Judge Brown were entitled to judicial immunity and Lord was entitled to quasi-judicial immunity.

The trial court properly found that plaintiff failed to allege that Judge Hulewicz was acting outside the scope of his judicial authority. Plaintiff's complaint alleged only that Judge Hulewicz issued a warrant and set a bond before an arrest or arraignment, and suggested that he violated her right to due process and abused his power. Issuing a warrant and setting bond are judicial acts that are within the scope of a judge's authority. To the extent that plaintiff alleged that Judge Hulewicz acted with malice or corruptly, "judges are not liable to civil actions for their judicial acts even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." *Serven*, 319 Mich App at 253 (quotation marks and citation omitted). As will be discussed, Judge Hulewicz was also entitled to immunity from constitutional claims.

The trial court also properly found that Judge Brown was entitled to judicial immunity for any actions he took in pursuing charges against plaintiff. Plaintiff argues that Judge Brown's actions cannot be considered official judicial activities because plaintiff was not involved in any legal matters in Judge Brown's court at the time and his actions cannot be tied to the 2008 case. Even if plaintiff was only a former litigant in Judge Brown's court, reporting a potential crime by such person would be within his judicial functions. Furthermore, any alleged malice by Judge Brown does not overcome his absolute judicial immunity.

With regard to Lord, plaintiff argues that Lord's role cannot be considered quasi-judicial because her job is not to assist the judge, but her client. However, quasi-judicial immunity has been applied to "participants in court proceedings," such a court-appointed psychologist, the

-5-

Friend of the Court, and a GAL in a guardianship proceeding involving a legally incapacitated adult. *Forton v St Clair Co Pub Guardian*, 339 Mich App 73, 83-85; 981 NW2d 103 (2021) (discussing other cases and applying quasi-judicial immunity to guardians). In this case, Lord was similarly acting as "an arm of the court" when she reported the possible crime. *Id*. at 83. Thus, she is entitled to quasi-judicial immunity, which also extends to allegedly malicious and corrupt acts. See *Serven*, 319 Mich App at 260.

With regard to the potential constitutional claims against Judge Brown and Lord, the trial court found that Judge Brown and Lord could not have violated plaintiff's constitutional rights because plaintiff did, in fact, commit eavesdropping. Plaintiff argues that this finding was improper because those charges were dismissed, she did not commit eavesdropping, and the trial court improperly relied on the police report instead of limiting its review to the allegations in her complaint.[2] However, it was not necessary for the court to find that plaintiff committed eavesdropping because judicial and quasi-judicial immunity apply to constitutional claims. In *Serven*, this Court quoted the Supreme Court of the United States, which stated, in part: "Because these features of the judicial process tend to enhance the reliability of information and the impartiality of the decisionmaking process, there is a less pressing need for individual suits to correct constitutional error." *Serven*, 319 Mich App at 254, quoting *Butz v Economou*, 438 US 478, 512; 98 S Ct 2894; 57 L Ed 2d 895 (1978). See also *Shelly v Johnson*, 849 F2d 228, 229-230 (CA 6, 1988) (concluding that prison hearing officers were entitled to absolute judicial immunity from constitutional claims). Compare *Spruyette v Owens*, 190 Mich App 127, 131; 475 NW2d 382 (1991) (concluding that the defendant was not the type of officer entitled to absolute immunity from constitutional claims). Thus, Judge Brown and Lord, as well as Judge Hulewicz, were also entitled to judicial and quasi-judicial immunity from plaintiff's constitutional claims.

## III. FAILURE TO STATE A CLAIM

Plaintiff also argues that the trial court erred by finding that she committed eavesdropping in support of its dismissal of her claim of malicious prosecution. Because all of plaintiff's claims, including the claim for malicious prosecution, were properly dismissed on the basis of immunity, it is unnecessary to reach this issue.

Nonetheless, we note that defendants concede that the trial court erred by stating that it was undisputed that plaintiff herself placed the MP3 player in the possession of her children for the purpose of recording the interviews with Lord because the allegations in the complaint did not support that finding. In ruling on a motion pursuant to MCR 2.116(C)(8), the court is required to accept the allegations in the complaint. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160;

---

[2] As further discussed in Part III, which addresses the trial court's ruling under MCR 2.116(C)(8) (failure to state a claim), defendants concede that the trial court erred by stating that plaintiff committed eavesdropping because this finding is not supported by the allegations in the complaint. Under MCR 2.116(C)(7), however, the allegations in the complaint are accepted as true, unless contradicted by documentary evidence submitted by the moving party. *Serven*, 319 Mich App at 253. Thus, the trial court could rely on the police report for purposes of considering immunity.

934 NW2d 665 (2019). Thus, the trial court erred by relying on the police report in dismissing plaintiff's malicious prosecution claim under MCR 2.116(C)(8).

Defendants contend, however, that the trial court properly dismissed the malicious-prosecution claim for failure to state a claim because Judge Brown and Lord did not initiate the proceedings. We agree.

"A motion under MCR 2.116(C)(8) tests the *legal sufficiency* of a claim based on the factual allegations in the complaint." *El-Khalil*, 504 Mich at 159. The "trial court must accept all factual allegations as true, deciding the motion on the pleadings alone. A motion under MCR 2.116(C)(8) may only be granted when a claim is so clearly unenforceable that no factual development could possibly justify recovery." *Id*. at 160 (citations omitted).

In order to maintain a claim of malicious prosecution, a plaintiff must prove that (1) a defendant "initiated a criminal prosecution" against him or her, (2) "the criminal proceedings terminated" in his or her favor, (3) "the private person who instituted or maintained the prosecution lacked probable cause" for his or her actions, and (4) "the action was undertaken with malice or a purpose in instituting the criminal claim other than bringing the offender to justice." *Walsh v Taylor*, 263 Mich App 618, 632-633; 689 NW2d 506 (2004). "[I]n Michigan, the prosecutor's exercise of his independent discretion in initiating and maintaining a prosecution is a complete defense to an action for malicious prosecution. Unless the information furnished [to the prosecutor] was known by the giver to be false and *was the information on which the prosecutor acted*, the private person has not procured the prosecution." *Id*. at 633 n 10 (quotation marks and citation omitted). Plaintiff alleged that Lord, at the direction of Judge Brown, reported that plaintiff recorded the conversations, which was incorrect. However, plaintiff failed to allege that any false information was the information on which the PA's Office acted. Plaintiff alleged that the case, including a recorded interview of plaintiff, was sent to the PA's Office for review and, at best, asserted a "proper investigation" was not done until before trial. Thus, plaintiff failed to sufficiently allege that Judge Brown and Lord initiated the proceedings.[3]

Affirmed.

/s/ Mark J. Cavanagh
/s/ Mark T. Boonstra
/s/ Michael J. Riordan

---

[3] Because all of plaintiff's claims were properly dismissed, we need not address defendants' other alternative grounds to affirm.